IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

AUTOMATED MERCHANDISING
SYSTEMS INC.,

    Plaintiff,

    v.                                                Civil Action No. 3:03-cv-88
                                                     (consolidated with 3:08-cv-97, 3:04-cv-80,
                                                     3:04-cv-75 and 3:04-cv-48)

CRANE CO.,

    Defendant.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PARTDEFENDANT'S MOTION TO COMPEL**

This matter comes before the Court on Defendant Crane Co.'s ("Crane") Motion to Compel Discovery from Plaintiff Automated Merchandising Systems ("AMS") filed on September 19, 2011.[1]  The Court held an evidentiary hearing and argument on Defendant's Motion on October 12, 2011. Defendant, Crane Co., appeared by John S. Torkelson, Esq., in person, Michael T. Smith, Esq., in person, and Jamil N. Alibhai, in person. Plaintiff appeared by Charles F. Printz, Jr., Esq, in person, and James D. Berquist, Esq., in person. At the hearing, the Court admitted the following exhibits submitted by Defendant: the affidavit of Sharon Shull as Exhibit one, Michele Riley's expert report on damages as Exhibit two, and a patent license agreement as Exhibit three, each without objection. At Court also admitted the following exhibits submitted by the Plaintiff: a non-infringement claim chart as Exhibit one, a sales chart as Exhibit two, and a letter from Mr. Berquist to Mr. Alibhai and Mr. Torkelson as Exhibit three,

---

[1] Dkt. No. 332.

each without objection. No testimony was taken nor was any other evidence adduced.

## I. **INTRODUCTION**

A.   Background

AMS filed this action on December 29, 2003 alleging patent infringement by Defendant, Crane Co., of four of Plaintiff's patents.  A detailed history of this litigation is set forth in the Order denying Plaintiff's Motion to Lift Stay (Dkt. No. 185), which was entered February 2, 2009.  This action was stayed by Order of Court entered on December 2, 2008 and the stay was subsequently lifted on April 5, 2011 (Dkt. No. 218).  Crane filed the instant Motion to Compel on September 19, 2011 requesting the Court to compel AMS to provide complete answers to Crane's discovery requests.

B.   The Motion

    1.   Defendant's Motion to Compel Discovery From Plaintiff Automated Merchandising Systems.[2]

C.   Decision

Defendant's Motion to Compel is hereby **GRANTED**, with the exception of Defendant's request for paper copies of source code documents, because AMS failed to adequately respond to Defendant's Request for Production of Documents Numbers 10, 12, 33, 38, 40, 42, 63, 76, 77, 79, 93, 101, 122, 133, 134, 145, 155, and 156, and to Interrogatories 20 and 21.

## II.  **FACTS**

AMS filed this action on December 29, 2003 alleging Defendant Crane Co. Infringed four of Plaintiff's patents in a lead case numbered 3:03-cv-88.  Although the present litigation has a

---

[2] Dkt. No. 332.

lengthy history, the salient facts for the present issue include the fact that this action was stayed by Order of Court entered on December 2, 2008 and that the stay was lifted on April 5, 2011 (Dkt. No. 218).

As discovery continued after the stay was lifted, certain discovery disputes arose and Crane filed the instant Motion to Compel on September 19, 2011, requesting the Court to compel AMS to provide complete answers to Crane's discovery requests. On October 11, 2011, AMS filed its Opposition to Crane's Motion to Compel Discovery.[3] On October 11, 2011, Crane filed its Reply in Support of its Motion to Compel Discovery from Plaintiff. A hearing was held on the Motion on October 12, 2011, at the conclusion of which this Court advised the parties that an order would be forthcoming.

### III.  PLAINTIFF'S MOTION TO COMPEL

A.     Contentions of the Parties

In its Motion, Defendant Crane requests the Court to compel certain discovery requests from AMS. Defendant requests that this Court compel Plaintiff to produce documents pursuant to Request for Production of Documents Numbers 33, 38, 40, 42, 63, 76, 77, 79, 93, and 101. Defendant argues these documents relate to patent licensing and settlement negotiations and are thus relevant to royalty rate calculations, because they are either not privileged or claims of privilege have been waived, and because AMS's basis for withholding, a Rule 408 argument, is misplaced because the current dispute has arisen in a discovery context as opposed to in an evidentiary context.

---

[3] Although the document was previously filed, the docket was modified on October 11, 2011 to unseal the Reply as it is not a sealed document. See Dkt. No. 360.

Defendant also argues Plaintiff should be ordered to produce documents pursuant to Request for Production of Documents Numbers 155 and 156. More specifically, Crane asks this Court to compel production of paper copies of (1) the pic.h source file, (2) the source code for the main vending machine controller (VMC), and (3) the source code for Sensit I because they provide evidence of how AMS's vend-sensing systems work, which is relevant to the Crane's claim that AMS infringes its '014 Patent and to Crane's defenses to AMS's infringement allegations.

Defendant also requests the Court to compel Plaintiff to provide documents in response to Requests for Production of Documents 10 and 12. Defendant argues, more specifically, that the Court should compel the production of: (1) documents related to the testing fo the Tal sensor by Ellenby, (2) documents related to Paul Mason's testing and examination of the Tal sensor, (3) communications between Ellenby and AMS relating to the testing of the Tal sensor, and (4) communications between Ellenby and Mr. Berquist or other counsel relating to the testing of the Tal sensor. Defendant argues these should be produced because this information is relevant to Crane's allegation of infringement of its '014 Patent.

Finally, Defendant contends the Court should compel AMS to respond to Interrogatories 20 and 21. Defendant argues that it needs responses to Interrogatory 20, which asks Plaintiff to identify each allegedly infringing product, device or apparatus, so that it can perform its damages analysis. As to Interrogatory 21, Crane argues AMS should be required to identify where each claim element is located in its vending machines and whether the claim element literally infringes or infringes based on the doctrine of the equivalents so that it can prepare its defense.

In opposition,  as to the documents regarding settlement and licensing negotiations Crane

4

requested, AMS contends Crane waived any demand for settlement negotiation documents because it failed to make a demand for the disputed discovery within thirty days. In addition, AMS argues that the settlement discussion materials are irrelevant and protected. Plaintiff argues these are irrelevant because the settlement agreement documents were created years after Crane's infringement began, so they are not relevant to the computation of royalty rates. Plaintiff also argues that under <u>Goodyear</u> settlement discussion materials are protected. Finally, Plaintiff argues that its expert did not rely on the terms of any of the settlement agreements, but rather used licenses negotiated at arms' length in determining the range for a hypothetical negotiation.

In regard to Requests for Production of Documents 155 and 156, Plaintiff argues that it does not have paper copies of the source code for the pic.h file or the main VMC, because these are only in Ellenby's possession. Plaintiff also argues that it only objects to the medium in which the source code should be produced to Crane, it does not object to the production itself. In addition, Plaintiff argues that neither it nor Ellenby has the Sensit I source code because AMS purchased this from Masterworks electronics, and it does not source this product from Masterworks anymore and has not done so for years.

Plaintiff also argues, with respect to Requests for Production of Documents 10 and 12, that it has already produced the requested Ellenby documents and engineering schematics requested. Specifically, in reference to the testing of the Tal Senor by Ellenby, Plaintiff contends that all documents generated as part of the testing process have been produced. With regard to Paul Mason's affidavit, Plaintiff contends that Mr. Mason only wrote a three-page memorandum based on his testing of the Tal Sensor and this has been produced. With regard to the communications between Ellenby and AMS, AMS argues it has produced those documents in

AMS_102094-AMS_102765. It also contends that the communications between Ellenby and counsel are privileged.

Regarding Interrogatories 20 and 21, Plaintiff argues Crane's request that it supplement its responses is premature because it does not yet have all the engineering and design documents from Crane for each vending machine model that it needs to be able to answer these requests. AMS also argues that Crane failed to meet and confer with regard to these disputed interrogatories as required by Federal Rule of Civil Procedure 37(a).

B.  Discussion

1.  **Requests for Production of Documents**

   c.  **Requests for Production of Documents 33, 38, 40, 42, 63, 76, 77, 79, 93, 101, 122, 133, 134, and 145**

Request for Production of Documents Number 33 asks for:

> All documents comprising, concerning, and/or relating to AMS' licensing of a patent whether the patent is owned by AMS, and the license granted by AMS, or owned by a third-party, and the license granted to AMS.

Request for Production of Documents Number 38 asks for:

> All documents, including settlement agreements, concerning or relating to reolution of claims made formally or informally by AMS of alleged or actual infrinement of its '402 Patent by any third-party, including U-Select-It Corporation (or its agents or employees), Fawn Engineering Corporation (or its agents or employees), Fawn Vendors, Inc. (or its agents or employees), Automated Products International Ltd. (or its agents or employees), and/or Gross-Given Manufacturing Co. (or its agents or employees).

Request for Production of Documents Number 40 asks for:

> All documents, including without limitation internal correspondence or memoranda, concerning or relating to the licensing of and rights in the '402 Patent.

Request for Production of Documents Number 42 asks for:

6

All documents concerning or relating to any agreements, arrangements or contracts, whether proposed and actual, between AMS and any other entity relating to the licensing of any rights in the '402 Patent, any foreign equivalent of the '402 Patent, or any patent owned or controlled by AMS that refers or relates to inventions involving any vend sensing system.

Request for Production of Documents Number 63 asks for:

All documents that bear upon or relate to the issue of what would constitute a reasonable royalty for a license voluntarily taken by AMS under the '402 Patent.

Request for Production of Documents Number 76 asks for:

All documents, including but not limited to settlement agreements, concerning or relating to resolution of claims made formally or informally by AMS of alleged or actual infringement of its '634 Patent by any third party.

Request for Production of Documents Number 77 asks for:

All documents, including without limitation internal correspondence or memoranda, concerning or relating to the licensing of and rights in the '634 Patent.

Request for Production of Documents Number 79 asks for:

All documents concerning or relating to any agreements, arrangements or contracts, whether proposed or actual, between AMS and any other entity relating to the licensing of any rights in the '634 Patent, any foreign equivalent of the '634 Patent, or any patent owned or controlled by AMS that refers or related to inventions involving any vend sending system.

Request for Production of Documents Number 93 asks for:

All documents that bear upon or relate to the issue of what would constitute a reasonable royalty for a license voluntarily taken by AMS under the '634 Patent.

Request for Production of Documents Number 101 asks for:

Documents, including without limitation internal correspondence ro memoranda, concerning or relating to each and every license, offer to license, settlement agreement, covenant not to sue, and other contractual arrangement relating to the '402, '634, '915, or '220 Patents, or their foreign equivalents, or any patent owned by AMS that related to vend sensing systems, as well as any drafts, offers, correspondence or other documents concerning such transactions.

Request for Production of Documents Number 122 asks for:

> Documents concerning or relating to AMS' settlement agreements with Seaga Manufacturing, Inc. or Crane.

Request for Production of Documents Number 131 asks for:

> Documents, including settlement agreements, concerning or relating to resolution of claims made formally or informally by AMS of alleged or actual infringement of its '634, '915, or '220 Patents by any third party, including U-Select-It Corporation (or its agents or employees), Fawn Vendors, Inc. (or its agents or employees), Automated Products International, Ltd. (or its agents or employees), and/or Gross-Given Manufacturing Co. (or its agents or employees).

Request for Production of Documents Number 134 asks for:

> Documents concerning or relating to any agreements, arrangements or contracts, whether proposed or actual, between AMS and any other entity relating to the licensing of any rights in the '634, '915, and '220 Patents, any foreign equivalent of the '634, '915, and '220 Patents, or any patent owned or controlled by AMS that refers or relates 10 inventions involving any vend sensing system.

Request for Production of Documents Number 145 asks for:
> Documents that support or evidence the damages that AMS seeks to recover from Crane, including the amount sought to be recovered and AMS' theories and methods of calculating its damages for Crane's alleged infringement of the patents-in-suit.

Crane contends these communications related to licensing and settlement agreements should be produced because they are relevant to royalty calculations and because they are not privileged. AMS contends Crane waived any demand for settlement negotiation documents because it failed to make a demand for the disputed discovery within thirty days. In addition, AMS argues that the settlement and licensing discussion materials are irrelevant and protected.

The question this Court is confronted with is whether documents related to settlement negotiations should be produced where there is a possibility they are relevant to royalty rate calculations. The best measure of a reasonable royalty is an established royalty. <u>Nickson Indus. v. Rol Mfg. Co., Ltd.</u>, 847 F.2d 795, 798 (Fed. Cir. 1988). When there is no established royalty,

8

a reasonable royalty rate can be determined based on hypothetical negotiations between the infringer and the patent holder to determine the amount the licensor and licensee would have agreed to just prior to the infringement. Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1302, 1324 (Fed. Cir. 2009). A reasonable royalty is calculated using the fifteen factors from Georgia-Pac. Corp. v. U.S. Plywood-Champion Papers, Inc., 318 F. Supp. 1116 (S.D.N.Y. 1970). The second factor of the fifteen is the "rates paid by the licensee for the use of other patents comparable to the patent in suit." Id. at 1120

Before the ResQNet decision, some courts barred the negotiations leading to settlements from being used as evidence to prove patent damages, see Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc., 332 F.3d 976, 981 (6th Cir. 2003), but other courts found these were relevant and discoverable. See Matsushita Elec. Indus. Co., Ltd. v. Mediatek, Inc., C-05-3148MMC, 2007 WL 963975, at *5 (N.D. Cal. Mar. 30, 2007); Bd. of Trs. of the Leland Stanford Junior Univ. v. Tyco Int'l Ltd., 253 F.R.D. 521, 522 (C.D. Cal. 2008). But, the landscape changed in 2010 when the Federal Circuit reached its decision in ResQNet.Com, Inc. v. Lansa, Inc., 594 F.3d 860 (Fed. Cir. 2010). There, the Federal Circuit stated that "the most reliable license in this record arose out of litigation," which seemed to indicate that settlements and their negotiations are discoverable and admissible. Id. at 872.

However, district courts have been split on what ResQNet mandates. Some courts have interpreted it as expressly calling for the production and admission of past litigation-based settlements as evidence of damages. See Tyco Healthcare Group LP v. E-Z-EM, Inc., No. 207CV262, 2010 WL 774878, at *2 (E.D. Tex. Mar. 2, 2010)(ordering a defendant to produce documents relating to past settlement negotiations in view of "the admissibility and importance

9

of prior related settlement agreements"); DataTreasury Corp. v. Wells Fargo & Co., No. 206CV72, 2010 WL 903259, at *2 (E.D. Tex. Mar. 4, 2010 (holding the documents admissible for "essentially all purposes" and that "concerns about the reliability of litigation-related licenses are better directed to weight, not [to] admissibility."); MSTG, Inc. v. AT&T Mobility LLC, No. 08C7411, 2011 WL 841437, at *3 (N.D. Ill. Mar. 8, 2011)(finding "[d]ocuments related to negotiations could shed light on why the parties reached their royalty agreement and could provide guidance on whether some or all of the licenses could be considered a basis for calculating a reasonable royalty"); Volumetrics Medical Imaging, LLC v. Toshiba Am. Medical Sys., Inc., No. 105CV955, 2011 WL 2470460, at *14 (M.D. N.C. June 20, 2011)(concluding that "ResQNet.com forecloses...[the] contention that agreements reached to resolve patent litigation are not relevant t0 the calculation of a reasonable royalty")(internal quotations omitted).

In contrast, other courts have found that ResQNet does not compel the admission of evidence relating to settlement agreements in prior litigation, but rather only that the decision was based on the specifics of that case. Fenner Invs, Ltd. v. Hewlett-Packard Co., No. 608CV273, 2010 WL 1727916, at *3 (E.D. Tex. Apr. 28, 2010). Other courts have held similarly. See Software Tree, LLC v. Red Hat, Inc., No. 609CV097, 2010 WL 2788202, at *4 (E.D. Tex. June 24, 2010)(finding "ResQNet has not upset this district's case law regarding discoverability of settlement negotiations."); ReedHycalog, UK, Ltd. v. Diamond Innovations Inc.,727 F. Supp. 2d 543, 546 (E.D. Tex. 2010) (holding the admissibility of litigation licenses "must be assessed on a case-by-case basis"); Clear with Computers, LLC v. Bergdorf Goodman, Inc., 753 F. Supp 2d 662, 664 (E.D. Tex. 2010)(determining that ResQNet was "the exception, not the rule").

Accordingly, this issue turns on this Court's interpretation of ResQNet. ResQNet did not address either the discoverability or admissibility of the litigation licenses because they were already a part of the record, but it seemed to indicate that these should be discoverable so that parties can establish a factual basis for a reasonable royalty. Even though, as Plaintiff argues, these might end up lacking probative value in determining a reasonable royalty, even something that is ultimately determined to be inadmissible is still discoverable under Federal Rule of Civil Procedure 26(b)(1) ("[r]elevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."). And, outside of the patent context, courts have generally declined to find a privilege that would preclude similar discovery in order to encourage settlement. See, e.g., In re Gen. Motors Corp Engine Interchange Litig., 594 F.2d 1106, 1124 (7th Cir. 1979); In re Subpoena Issued to Commodity Futures Trading Comm'n, 370 F.Supp. 2d 201, 207-12 (D.D.C. 2005); Primetime 24 Joint Venture v. Echostar Commc'n Corp., 2000 WL 97680, at *4 & n.5 (S.D. N.Y. Jan 28, 200). Furthermore, many of the court decisions that have interpreted ResQNet differently are distinguishable. Fenner involved the admissibility of settlement agreements at trial, not the agreements' discoverability, which is the issue presented here. The Court in ReedHycalog did not find that settlement negotiations should not be discoverable, only that their discoverability should be determined on a case-by-case basis. Finally, the decision in the Software Tree case is distinguishable because the Court based its decision, in part, on the defendant's failure to show the documents were relevant. The Court held that "Plaintiff's infringement and damages theories...are readily accessibly by way of other discovery sources." Software Tree, 2010 WL 2788202, at *4. This is distinguishable from the instant case where even after eight years,

11

Plaintiff's infringement theory has not been entirely explained, and therefore is not readily accessible in other discovery sources.

Finally, although AMS makes an argument that Crane has waived its right to request these documents, it was not until September 16, 2011, that AMS confirmed it would not be producing any other documents regarding its settlements and licenses. Crane filed its Motion to Compel the next day. Therefore, this Court does not find Crane has waived its right to seek relief. According, Defendant's Motion to Compel documents related to settlement agreements must be granted. Defendant is to provide responses to Requests for Production of Documents 33, 38, 40, 42, 63, 76, 77, 79, 93, 101, 122, 133, 134, and 145 within fourteen (14) days of the date of this Order.

      b.      **Requests for Production of Documents 155 and 156**

Defendant's Request for Production of Documents 155 asks for "[s]chematics of AMS vending machines." Defendant's Request for Production of Documents 156 asks for "[s]ource code, software and firmware used in programming AMS vending machines."

Defendant argues these are relevant to how the vend-sensing systems work. Plaintiff does not dispute the relevancy of the source code materials, but argues only that it should not be required to produce these in paper copies, and, moreover, that it cannot produce the materials in paper form because only either Ellenby or Masterwork Electronics has the source codes.

This Court finds Plaintiff's arguments unpersuasive. At the October 7, 2011 hearing, Plaintiff admitted that it only disputed the form in which the source code should be produced , not that the code could or should be produced. Hr'g Tr. 13. Under Federal Rule of Civil Procedure 34(b)(1)(C), a party "may specify the form or forms in which electronically stored

information is to be produced." Here, the document request did not specify any particular form in which the source code should be produced. In such a case, if the request does not specify a form, then a responding party "must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms." Fed. R. Civ. P. 34(b)(2)(E)(ii). Furthermore, "a party need not produce the same electronically stored information in more than one form." Id. In this case, Plaintiff made available the electronic code for inspection on computers at its offices, and used one of its experts to make sure the code could be opened and read. Hr'g Tr. 17. Because source code is more or less the equivalent of a word processing document or text file, ordinarily maintained on a computer, in one or, more likely more than one, computer file (because it is a computer that is going to work with its corresponding object code), Plaintiff has produced the source code in a form in which it is ordinarily maintained. It also made sure it could be opened and read, thereby meeting its discovery obligations. Even though it seems Defendant attempted to argue this is not a "reasonably usable form," Defendant has failed to meet its burden of showing that the source code produced in electronic form for inspection was not "reasonably usable." Defendant has only stated that it would like paper copies for its review process. It has not provided the Court with any information demonstrating why it has found the electronic form not to be "reasonably usable." Therefore, Plaintiff's request to have the source code produced in paper is hereby denied.

However, as to the source code that has not been produced, AMS maintains that it cannot provide this information because the documents Crane has asked for in these Requests are only in Ellenby's and Masterworks' control. The term "control" is broadly construed. See M.L.C., Inc. v. N. Am. Philips Corp., 109 F.R.D. 134, 136 (S.D.N.Y. 1986) (interpreting the word

"control" in the context of a motion for sanctions in an antitrust suit); Sciele Pharma, Inc., v. Brookstone Pharm., LLC, No. 109CV3283, 2011 WL 3844891, at *4-5 (N.D. Ga. Aug. 30, 2011).  In addition, "[t]he fact that a court cannot exercise jurisdiction over a person does not necessarily mean documents in that person's possession are shielded from the reach of Rule 34, which applies only to parties to the litigation." Afros S.PA. v. Krauss-Maffei Corp., 113 F.R.D. 127, 129 (D. Del. 1986). Rather, the applicable test under Rule 34 is whether the litigant has the ability to obtain the documents upon reasonable request, either as a matter of law or as a matter of practical fact. See, e.g., Ramsey v. NYP Holdings, Inc., No. 00Civ.3478, 2002 WL 1402055, at *9 (S.D.N.Y. June 27, 2002); Riddell Sports, Inc., v. Brooks, 158 F.R.D. 555, 558 (S.D.N.Y. 1994). Here, even though AMS contends that the source codes are not in its possession, AMS was able to gain access to these source codes and make them available for inspection on October 7, 2011. This Court takes this as an indication that AMS has more control over the documents than it has indicated to this Court. Moreover, Plaintiff has submitted nothing more than conclusory statements to indicate that these documents are not in its custody or control, and accordingly, this Court must grant Defendant's motion to compel with respect to these source codes.

      Finally, as to Crane's request for schematics, AMS identified certain documents it produced pursuant to these request in its Opposition. Crane responded by asking AMS to identify the documents belonging to Sensit II by Bates number. See Reply 10 n. 8. Furthermore, neither party seriously disputed the production of these requested schematics at the October 12, 2011 hearing. Accordingly, AMS is ordered to identify by Bates number those documents that belong to the Sensit II vending machine within fourteen (14) days of the date of this Order. AMS

is also ordered to provide any source code which it has not already produced electronically within fourteen (14) days of the date of this Order.

### b. Requests for Production of Documents 10 and 12

Defendant's Request for Production of Documents 10 asks for "[a]ll documents referring to, relating to, or concerning, the '014 Patent, its prosecution, infringement, noninfringement, validity, invalidity, enforeceability, or unenforceability." Defendant's Request for Production of Documents 12 asks for "[a]lll documents concerning prior art to the '014 Patent or any search for such prior art."

Crane argues that pursuant to this Request, AMS has yet to produce (1) Documents related to the testing of the Tal sensor by Ellenby, (2) documents related to Paul Mason's testing and examination of the Tal sensor, and (3) communications between Ellenby and AMS relating to the testing of the Tal sensor, and (4) communications between Ellenby and Mr. Berquist or other counsel relating to the testing of the Tal sensor. AMS argues that it has already produced the Ellenby documents, the documents generated by Mr. Mason's testing, and communications between Ellenby and AMS. It has not produced all of the communications between Ellenby and Mr. Berquist because it claims they are privileged.

As to the documents related to Ellenby's testing of the Tal sensor that Crane asks for pursuant to these document requests, Crane admitted at the October 12, 2011 hearing that it is possible these documents have already been produced, and, if so, Crane just needs to know what specific documents AMS is referring to, by Bates number. Hr'g Tr. 33  Therefore, this discovery dispute is easily solved: AMS is ordered to provide the exact Bates numbers for these documents within fourteen (14) days of the date of this Order.

As to the other requests, including any other Ellenby documents and documents related to Paul Mason's testing of the Tal sensor, communications between AMS and Ellenby relating to the Tal sensor, and communications between Ellenby and counsel related to the Tal sensor, this Court is, first, not persuaded that no additional documents exist as AMS contends. Testimony elicited at the Motion to Compel hearing has persuaded this Court that the issue is not that the documents requested do not exist, but rather that they have not been found. When certain documents have not been located,

> "[t]he defendant may not excuse itself from compliance with Rule 34 by utilizing a system of record-keeping which conceals rather than discloses relevant records, or makes it unduly difficult to identify or locate them, thus rendering the production of documents an excessively burdensome and costly expedition. To allow a defendant whose business generates massive records or frustrate discovery, by creating an inadequate filing system, and then claiming undue burden, would defeat the purposes of the discovery rules.

Kozlowski v. Sears, Roebuck & Co, 73 F.R.D. 73, 76 (D. Mass. 1976).

In addition, Plaintiff "has a duty to make a good faith effort to obtain responsive documents from its manufacturers, and to produce any documents that are discovered as a result of that effort." Sciele Pharma, Inc. v. Brookstone Pharm., LLC, No. 109CV3283, 2011 WL 3844891, at *4 (N.D. Ga. Aug. 30, 2011). AMS's choice of words and seemingly contradictory statements leads this Court to believe AMS has not complied with its discovery obligations. For example, in its Opposition, AMS stated that it is "not aware of any other responsive documents in Ellenby's possession but will produce any additional documents identified," but it also states that "there is nothing to compel." Opp. 13. At the hearing, counsel for AMS stated "I *believe* that all of the communications have been produced with AMS and Ellenby as they related to this Tal sensor and the testing." Hr'g Tr. 39 (emphasis added). Counsel thus appears less than certain that all the documents have been produced. Given this record, the Court rules that these documents must be

16

produced.

Second, as to AMS's claims that these are privileged communications, when a party withholds otherwise discoverable information claiming that the information is protected under privilege or work-product doctrine, the party must expressly state the information is protected and describe the nature of the information, without revealing the information itself, to allow other parties to assess the claim. Fed. R. Civ. P. 26(b)(5). "The burden of establishing the attorney-client privilege rests upon the party claiming privilege," Energy Capital Corp. v. United States, 45 Fed. Cl. 481, 484 (2000), and similarly, "the party invoking the protection of the work-product doctrine bears the burden of demonstrating the applicability of the doctrine." Eden Isle Marina, Inc. v. United States, 89 Fed. Cl. 480 (2009). A claim of privilege must be express and the nature of the communication, document or thing described with particularity. Fed. R. Civ. P. 26(A).

In this case, the Court is not satisfied that Plaintiff has demonstrated the applicability of the work-product doctrine or the attorney-client privilege to the requested documents. AMS objected to these requests on the basis of attorney client privilege and work-product, and it did submit a privilege log accompanying its responses, but the communications between Mr. Berquist and Ellenby are not included on the privilege log, making it impossible for the Court to determine that these documents are in fact protected.[4] In addition, there is no mention of a claim of privilege with regard to these documents in AMS's Opposition. The only evidence AMS has presented in order to carry its burden of establishing that the attorney-client privilege or the

---

[4]The roles of the various individuals listed on the privilege log are also not indicated, making it difficult for this Court to interpret the privilege log.

17

work-product doctrine apply are Mr. Berquist's bare assertions that these communications only involve his efforts to collect documents, which he believes make them privileged. Hr'g Tr. 38-40. Accordingly, this Court finds that AMS has not met its burden of demonstrating to the Court that they are privileged. Defendant is to provide responses to Requests for Production of Documents 10 and 12 within fourteen (14) days of the date of this Order.

### d.     Interrogatories 20 and 21

Interrogatory 20 asks:

> Identify each claim of each patent-in-suit allegedly infringed by Crane ("Asserted Claims(s)"). Separately for each Asserted Claim, identify each accused apparatus, product, device, process, method, act or other instrumentality ("Accused Instrumentality") made, used, sold, or offered for sale by Crane that AMS contends infringes such Asserted Claim. Identify each product, device, and apparatus by name or model number.

Interrogatory 21 asks:

> Identify specifically where each element of each Asserted Claim is found within each Accused Instrumentality, including for each element that AMS contends is goverened by 35 U.S.C. §112(6), the identity of the structure(s), act(s), or materials(s) in the Accused Instrumentality that performs the claims function, and state whether each element of the Asserted Claim(s) is claimed to be literally present or present under the doctrine of equivalents in the Accused Instrumentality, including an explanation of why such structure(s), act(s), or material(s) should be considered an equivalent of the corresponding element or limitation in the Asserted Claim.

Crane contends that it needs this information to complete its damages analysis, and without an identification of each allegedly infringing product, device and apparatus by name or model number, they would only be able to "guess at what machines AMS believes are infringing." Def's Mot. to Compel 17. It also contends it needs the requested information so that it can understand and defend against the claims AMS is bringing. Id. AMS argues that it does not have enough information to give more complete answers because Crane has not produced all the

documents it needs in order to be able to do so.

This issue appears largely to have been resolved at the October 12, 2011 hearing. There, AMS did not argue that it did not have to respond to these interrogatories, but rather that "the problem that [it has] in answering this question is Crane has not produced the schematics the Court ordered them to produce." Hr'g Tr. 67. In addition, in its response to the Motion to Compel, AMS stated that "[s]amples of each of those machines, or engineer drawings of those machines, are necessary to determine the actual extent, if any, to which the internal product delivery path has been constrained for each model. The documents Crane has produced do not include the vending machine drawings necessary to make this determination." Resp. to Mot. to Compel 19. However, at the hearing, Crane responded by saying that "we will produce the drawings and we will do it in the next couple of days." Hr'g Tr. 74. Counsel for Crane noted that they had taken some time to collect, but that he had been assured that they had all been collected. Accordingly, this Court finds AMS has, or will soon be given, the information it needs in order to respond to these interrogatories. Accordingly, Plaintiff is ordered to fully respond to Interrogatories 20 and 21 within fourteen (14) days of the date of this Order.

C.  Decision

Because Plaintiff failed to comply with the discovery rules with regard to interrogatories and requests for production of documents, Defendant's Motion to Compel is **GRANTED** except that Plaintiff is not required to produce paper copies of the source code. Plaintiff is to provide complete responses to all interrogatories and requests for production of documents as instructed in this Order within fourteen (14) days from the date of this Order.

If Defendant wishes to file a Motion for Sanctions, Defendant is directed to file a Motion

19

for reasonable expenses within fourteen (14) days from the date of this Order. Plaintiff is ordered to file any objections to the Motion within fourteen (14) days from the date of Plaintiff's filing. Both parties shall have the opportunity to be heard on this matter at a hearing set for November 28, 2011 at 1:30 pm.

Filing of objections does not stay this Order.

Any party may, within fourteen (14) days after being served with a copy of this Order, file with the Clerk of the Court written objections identifying the portions of the Order to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the District Court Judge of Record. Failure to timely file objections to the Order set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Order.

The Clerk of the Court is directed to transmit a copy of this Order to parties who appear *pro se* and any counsel of record, as applicable.

**IT IS SO ORDERED**.

DATED: October 21, 2011                     /s/ *James E. Seibert*
                                            JAMES E. SEIBERT
                                            UNITED STATES MAGISTRATE JUDGE